MATTHEW GROFF

*vs.*

ALEXANDER RAMSEY, *et al.*

A conveyance of land to a purchaser for a valuable consideration, made by an agent of the owner authorized by a letter of attorney not under seal to sell such land, is evidence of a contract to convey, sufficient to sustain an action by such purchaser against the principal for specific performance of such contract.

Such conveyance, although inoperative as a transfer of the legal title,

Groff v. Ramsey et al.

yet vests in the grantee an equitable title to such land, which is superior to the legal title of a subsequent grantee of the principal with notice of the letter of attorney and the conveyance by the agent; and such subsequent grantee may be decreed to convey the legal estate to the holder of such equitable title.

Actual possession of land by a person other than the vendor thereof is notice sufficient to put a purchaser on inquiry as to the particulars of the title of the occupant; and if the occupant is in possession as tenant of another, the purchaser is affected with like notice of the title of the occupant's landlord.

The decision in *Morrison vs. Marsh*, 4 *Minn.* 422, followed, as establishing a rule in the law of real property.

Whether a purchaser of land, with sufficient notice of the equitable title of a person other than his vendor, has actual knowledge of such equitable title is immaterial.

The record of a bond and mortgage, and of the foreclosure of the mortgage by advertisement, *held* admissible in evidence, irrespective of their validity, in connection with and as explanatory of oral testimony; and being offered not as a basis of title, but as showing the circumstances under which the defendant purchased the land in controversy, and in explanation of transactions in regard to the land between the defendant and the plaintiff's grantor.

An alleged copy of an instrument not entitled to record, found among the records of the registry of deeds, was offered and admitted in evidence at the trial, upon preliminary proof of the existence and loss of the original instrument, and of the verity of the copy. *Held*, that the copy was properly admitted as secondary evidence. *Held*, further, that the order in which the preliminary proofs should be received in such cases, rests in the sound discretion of the court to which they are offered; that the exercise of such discretion, while reviewable in the appellate court, will not be interfered with except in case of abuse; and that a new trial should not be granted because of the admission of such secondary evidence without adequate preliminary proofs first offered, if it appears from all the evidence in the case that facts sufficient to authorize the admission of the secondary evidence were before the court.

The party seeking to introduce secondary evidence of the contents of an alleged lost instrument is required to give some evidence that such instrument once existed, though slight evidence is sufficient for the purpose, and that a *bona fide* and diligent search has been unsuccessfully

Groff v. Ramsey et al.

made for it in the place where it was most likely to be found, if the nature of the case admits such proof.

An entry in the reception book of the register of deeds of the reception for record of an alleged lost instrument, which was not entitled to record, *held* admissible as part of the preliminary proof, and in connection with other evidence, under the circumstances stated in the opinion.

Whether a paper, offered as a copy of an alleged lost instrument, should be exhibited to a witness, that he may testify as to its correctness as a copy, before he has testified to the prior existence of the original, rests in the sound discretion of the court in which the action is tried.

Declarations of G, (the common source of plaintiff's and defendant's title,) made after the execution of the instrument under which defendant claims, *held* inadmissible in evidence for defendant, in any case, except as corroborating other testimony previously given; and, *semble*, that in the present case, as stated in the opinion, such declarations were inadmissible for any purpose.

This action was brought in the court of common pleas of Ramsey county, and was tried by the court without a jury. Judgment was ordered for the defendant Ramsey, (who alone answered the complaint,) for the affirmative relief asked by him in his answer. The plaintiff appeals from an order refusing a new trial. The case is fully stated in the opinion.

BRISBIN & PALMER for Appellant.

BIGELOW, FLANDRAU & CLARK, and C. K. DAVIS for Respondent.

*By the Court.*—McMILLAN, J.—This is an action brought by the plaintiffs for the partition of certain real estate or a sale thereof if partition cannot be made, &c. The premises which are alleged to be subject to partition or sale are the east half of lot ten in block twenty-six, St. Paul proper, being twenty-five feet front on Third street by one hundred and fifty feet deep, the value of which is alleged to be $12,500.

Groff v. Ramsey et al.

The complaint alleges title in the plaintiff, Matthew Groff, in fee, in and to the undivided two-thirds of the premises, and admits title to the remaining undivided one-third thereof in the defendant Ramsey.

The answer for a first defense denies that plaintiff ever had, or now has, any title whatever to any portion of the premises, and avers that the title in fee to the entire premises for a long time previous to the commencement of the action has been, and still is in the defendant, Alexander Ramsey.

For another and separate defense the answer sets up the facts, upon which the defendant claims title in fee to the entire premises.

For a further and separate defense, the answer avers title in fee to the premises in Ramsey, and possession thereof by him, and that the plaintiff claims some estate or interest therein adverse to said Ramsey, and demands judgment that the adverse claim of plaintiff be determined and adjudged to be without foundation, and void, and that Ramsey be adjudged to be the owner in fee-simple of the premises, and the title quieted and settled in him; that the plaintiff, and all persons claiming under him, be enjoined from setting up any adverse claim, and that the plaintiff be adjudged to convey to Ramsey, &c., or that the judgment stand in place of such conveyance, &c.

The title to the premises is the paramount issue in the case. The cause was tried by the court without a jury, and the facts found by the court are fully set forth in the written findings. There is no dispute about the fact that, on and prior to the 7th of April, 1849, one Lucretia M. Curtis was the owner in fee and possessed of lot ten, block twenty-six, St. Paul proper, and that on the 7th of April, 1849, by warranty deed of that date filed for record on the 21st of April following, the said Lucretia M. Curtis conveyed the said lot, (of which the premises involved in this action are the east half,) to Samuel Gilbert, Jr., James

McBoal and C. P. V. Lull.   Nor is it disputed that, by virtue of a certain mortgage executed by Lull, and certain conveyances from Lull and Gilbert and others under them, the undivided half of the entire lot, embracing Lull's undivided third and the undivided half of Gilbert's undivided third, became vested in one Samuel J. Wilkin prior to the 6th day of September, 1864, and was so vested in him on that day, which was prior to the execution of the deed from Lull to plaintiff, under which he claims title.   Nor is there any doubt that, by the deed of McBoal to Ramsey of April 7th, 1852, recorded April 20th, 1852, McBoal's undivided one-third of the entire lot was vested in Ramsey.   The only portion of the original lot, therefore, which remains, and about the title to which there can be any controversy, is the one undivided half of the undivided third of Samuel Gilbert, Jr.

The fact is established beyond controversy that Gilbert acquired his interest in the premises by the deed from L. M. Curtis to Gilbert, McBoal and Lull on the 7th of April, 1849, and both parties find in him a common source of title.   The plaintiff claims title under him by virtue of the following conveyances:

1st.   *A quit-claim deed*, dated July 30th, 1857, recorded the 8th of August, 1857, executed by Samuel Gilbert, Jr., and Jane Gilbert, his wife to C. P. V. Lull, in consideration of five dollars, releasing to said Lull all the interest of said Gilbert and wife in said lot 10, block 26.

2.   *A quit-claim deed*, dated July 29th, 1869, executed by C. P. V. Lull to the plaintiff, by which, in consideration of $500, he released and quit-claimed said property to the plaintiff, Matthew Groff.

The defendant, Alexander Ramsey, claims to have acquired the equitable title to the undivided half of Gilbert's undivided third of the lot on the 4th day of June, 1852, by virtue of

certain negotiations and written instruments hereafter detailed, and that the plaintiff and his grantor had notice thereof at and prior to the time of the conveyance to him.

We do not deem it necessary to comment upon the specific objections by the appellant to certain findings of the court, on the ground that such findings are not supported by the evidence. We deem it sufficient to say that all the findings, which are material to the decision of the case in the view we take of it, are fully sustained by the evidence. We may advert, however, to the fact that the partition deed between Wilkin and Ramsey, executed on the 6th of September, 1864, although offered in evidence is not embodied in the case before us; and the presumption in its absence is that the recitals therein show the fact, stated in the finding of the court, "that in pursuance of an agreement made some years before, (and which had been partly executed by exclusive possession being taken by the parties in accordance with its terms,) on the 6th day of September, 1864," the partition deed between Wilkin and Ramsey was executed.

Assuming, as we will for the present, that the evidence was properly received, we will determine, *first*, whether, upon the facts found, Ramsey acquired an equitable title to an undivided half of Gilbert's undivided third of lot 10 in block 26, St. Paul proper. *Second:* If he did, had Lull and the plaintiff Groff sufficient notice of Ramsey's equitable title at the time of the respective conveyances to them, under which plaintiff claims title.

*Third:* We will consider objections to the testimony.

The letter under which Lull acted in the negotiations carried on by him and McBoal with Ramsey, was as follows:

"NELSON'S LANDING, Feb. 7th, 1850.
"MR. C. P. V. LULL:

"Respected Sir,—

"I received your letter yesterday, in answer to which I write you the present. I do hereby constitute you, C. P. V. Lull, my power of attorney, to act as he may see proper in relation to a certain house and lot in the town of St. Paul, against which there is a mortgage in favor of a Mrs. Curtis; the said C. P. V. Lull is hereby authorized to close said mortgage, or sell said house and lot. I hereby acknowledge the receipt of ten dollars, the sum total of all I claim in said house.

S. GILBERT, JR.

"N. B   I have tried to do as you requested me.  I wish to have nothing more to do with the premises.  You have paid me for my part, so you can do with it as you see proper.  My love to all.  Receive my best respects.

S. GILBERT, in haste."

The authority of an agent to sell and to contract for the sale of real estate may be by parol, and if the agent acts within the scope of the authority conferred upon him, the principal will be bound. *Fry on Specific Performance*, 123, 235, 228—9.

It appears from the testimony of Lull that, at the time this letter was written, there was a house upon the lot, and that he was not concerned with Gilbert in any other property. The existence of the outstanding mortgage upon the lot to Mrs. Curtis is also established.

These facts, in connection with the letter, leave no reasonable doubt that the premises referred to in the letter are those owned by Gilbert, Lull and McBoal, to-wit, lot 10, block 26. The letter by its plain terms, at the least, constitutes Lull the agent of Gilbert to sell the entire interest of the latter, or any

part of it, in the premises, without accountability for the proceeds.

As appears from the finding of the court, Gilbert having left the then Territory of Minnesota in the fall of 1849, with the purpose of remaining away, and not having returned, L. M. Curtis, the mortgagee in the mortgage executed by Gilbert, McBoal and Lull upon the premises, in the year 1850, took certain steps towards the foreclosure of said mortgage, and on the 8th of June, 1850, claiming to act by virtue of the power of sale contained in the mortgage, had the property sold at public sale by Charles Bazille, then acting as coroner of the said county of Ramsey, at which sale the property was sold to the said L. M Curtis for the sum of four hundred dollars; and the coroner, on the 10th of June, 1850, executed a certificate of sale to the said L. M. Curtis, in which it was stated that on the 8th of June, 1852, unless it was sooner redeemed as provided by law, the said L. M. Curtis, as such purchaser, would be entitled to receive a deed of the said property.

Under this state of affairs the court finds distinctly that, in the winter and spring of 1852, McBoal and Lull, fearing to lose the property in consequence of the foreclosure proceedings aforesaid, entered into negotiations with the defendant Alexander Ramsey, the object of which was to sell to the said Ramsey an undivided half interest in the said property, and thereby to procure an amount of money sufficient to redeem such property from such foreclosure sale aforesaid  During the course of the negotiations McBoal and Lull claimed to own the whole of said property in common; but upon Ramsey's calling their attention to the record, which disclosed an undivided third interest in said property in Gilbert, Lull claimed to have authority to dispose of the whole of Gilbert's interest in said property, and showed to Ramsey, as such authority, the letter of February 7th, 1850, from Gilbert to Lull.

The result of the negotiations between Lull and McBoal of the one part, Lull assuming also to act as the agent of Gilbert, and Ramsey on the other part, was an agreement on the part of Ramsey to purchase a half or undivided half interest in the property and pay for the same the whole amount due for the redemption of such property as aforesaid, something over four hundred dollars, and an additional sum of $175 to McBoal. Ramsey paid the amounts, and, to carry out said agreement on the part of McBoal, Lull, and Gilbert acting through Lull, the following papers were executed : Deed from James McBoal to Alexander Ramsey, dated April 17th, 1852, and filed for record, April 20th, 1852, conveying the undivided half of lot ten, block twenty-six, St. Paul proper, recorded in Book D, page 26. Quitclaim deed from Samuel Gilbert, jr., by C. P. V. Lull, his attorney in fact, dated 4th day of June, 1852, filed for record 7th of June, 1852, and recorded in Book D, page 150, releasing the interest of said Gilbert in the equal undivided half part of the equal undivided one-third part of lot 10, block 26, town of St. Paul, &c. An assignment by Henry McLean and wife, (the latter being L. M. Curtis, now married to McLean,) through B. W. Brunson, of the aforesaid mortgage, with bond secured by same, to Alexander Ramsey and C. P V. Lull, Brunson being attorney in fact of McLean and wife by power of attorney, dated June 7th, 1851, and recorded June 7th, 1852, in Book D, page 148. A redemption receipt by the sheriff, running to Ramsey and Lull, dated June 5th, 1852, recorded in Book D, of deeds, page 149, on the 7th June, 1852 ; the foregoing assignment being recorded at the same time on page 148 of same book.

The negotiation, heretofore mentioned as begun in the winter or spring of 1852, was finally concluded on the 5th day of June, 1852, and Ramsey went into possession of the

one undivided half of said lot, and also on said day purchased of the said Lull for $350, an undivided half interest in a house standing on said lot, which seemed to have been owned by Lull, neither McBoal nor Gilbert having any interest therein. The amount so paid by said Ramsey for the property as afore-said was about what the same was reasonably worth.

These facts show that the negotiations carried on between the parties were for the sale of the undivided half of the lot to Ramsey; that the interest of McBoal, which was one undivided third, and the undivided half of the undivided third of Gilbert in the premises, were to constitute this undivided half so sold to Ramsey. The fact that McBoal and Lull claimed to own the property in common, although McBoal. in fact, owned but one-third, affords an explanation of the reason why the deed from McBoal to Ramsey was made to embrace the undivided half of the premises.

There was, then, a positive agreement on the part of Lull, acting as the agent of Gilbert under the authority conferred by the letter, to sell to Ramsey the undivided half of the undivided third of the premises, in pursuance of which the quit-claim deed of Gilbert by Lull to Ramsey, of the 5th of June, 1852, was executed.

Lull, in making the agreement to sell, was acting within the scope of his authority, and, as we have seen, had authority to bind his principal, Gilbert, by a written contract to sell. Under these circumstances, although the quit-claim deed executed by him as the attorney in fact of Gilbert to Ramsey, was ineffectual as a conveyance of the legal title to the property embraced in it, because his authority was not given under seal, it may be upheld in chancery as evidence of a contract to sell. *Morrow vs. Higgins*, 29 *Ala.* 450; *Story on Agency*, § 49. "Whenever there exists, under the hand of the party sought to be charged, a written statement, containing either

expressly or by necessary inference all the terms of the agreement; that is to say, the names of the parties, the subject matter of the contract, the consideration and the promise, and leaving nothing open to future treaty," the statute of frauds is complied with, and, "provided this be found, no formality is required, nor does it signify at all what is the nature or character of the document containing such written statement—whether it be a letter written by the party to be charged to the person with whom he contracted, or to any other person, or a deed, or other legal instrument." *Fry on Specific Perf.*, 228, 229; 1 *Greenl. Ev.*, § 268; *Welsh vs. Usher and others*, 2 *Hill. Ch. So. Car.* 167; *Hansen vs. Michelson*, 19 *Wis.* 498.

By this instrument, then, the equitable title to the undivided half of the undivided third of Gilbert in the premises passed to Ramsey.

We then come to the question of notice. There can be no doubt that Lull, being a party to the entire transaction, was chargeable with notice of Ramsey's equitable title at the time of the conveyance from Gilbert to himself.

It remains to inquire whether Groff is chargable with notice of Ramsey's equitable title. These facts, bearing upon the question of notice to Groff, appear by the finding of the court, viz.: That on the 5th day of June, 1852, upon the final conclusion of the negotiations between McBoal and Lull, and Gilbert acting by Lull, of the one part, and Ramsey of the other part, and upon the execution of the respective deeds by McBoal personally, and Gilbert by Lull as his attorney in fact, to Ramsey, and the other papers and instruments referred to in the finding of the court, Ramsey went into possession of the undivided half of lot 10, block 26, aforesaid, and continued in the possession of the same, through his tenants, from said 5th of June, 1852, till some

time in the year 1856 or 1857, when the house on said lot was destroyed by fire, and received rents from said premises to the amount of $472.56 ; That after the destruction of the said house by fire, as aforesaid, the lot remained vacant till 1862 ; That in the year 1862 Ramsey, by a lease dated March 22d, 1862, and duly recorded on the 3d of November, 1862, leased the east half of said lot 10 for the term of ten years, to the defendant, John Thorwarth ; said John Thorwarth has continued to occupy said east half of lot 10 under said lease from the year 1862 to the present time ; and that immediately upon the execution of said lease, the said Thorwarth commenced the erection of and erected valuable improvements on said premises, to the value of four or five thousand dollars, which said improvements still remain on said premises, in the occupancy of said Thorwarth as tenant, as aforesaid ; and that Ramsey has received under said lease rental at the rate of $250 per year. It also appears that on the 6th of September, 1864, (in pursuance of an agreement made some years before, and which had been partly executed by exclusive possession being taken by the parties, in accordance with its terms,) a partition deed was executed by said Samuel J. Wilkin, (who was the owner of the other undivided half of the said lot 10,) and the said Alexander Ramsey, which deed was duly recorded on the 14th of September, 1864, and by which the said Samuel J. Wilkin conveyed to said Ramsey the east half of said lot 10, block 26.

It also appears that from June, 1852, Ramsey paid all the taxes due on the undivided half of said lot 10 up to and until his assignment for partition as aforesaid, since which time he has paid all the taxes assessed and due on the east half of said lot.

It also appears that the deed from Gilbert and wife to Lull, under which plaintiff claims title, was made on the 13th of

July, 1857; that it was a quit-claim deed in the usual form, without any covenants whatever, and that the consideration in the deed was five dollars; that the deed from Lull to plaintiff Groff was made on the 29th of July, 1869, and was also a quit-claim deed without any covenants whatever, and that the consideration mentioned in the deed was five hundred dollars. There is no evidence touching the consideration in either of these deeds, except what is furnished by the deeds themselves. It also appears that at the date of the deed from Lull to plaintiff Groff, the east half of said lot 10, (the premises of which partition or sale is sought to be made,) was worth about twelve thousand dollars, in addition to the improvements thereon at that date, which were worth some four or five thousand dollars. The complaint of the plaintiff alleges that the rents, issues and profits of the said east half of said lot 10 have amounted for the last sixteen years, and still amount to $250 per year rent, all of which have been collected and received by said Alexander Ramsey and appropriated to his own use.

The plaintiff in his case in chief offered in evidence a quit-claim deed duly executed from C. P. V. Lull and wife to Samuel J. Wilkin, of and to the west half of said lot ten, block twenty-six, St. Paul proper, bearing date Sept. 12th, 1864, recorded Nov. 12th, 1864, so that, as to the west half, Lull had no title whatever, and it appears by the finding of the court that Wilkin was in the exclusive possession of the west half of the lot and had been for some years prior to the 6th of September, 1864. It also appears that Ramsey, on and prior to the 6th of September, 1864, was in the possession of the several east half of the lot by his tenant Thorwarth, claiming title in himself to the entire east half, and exercising acts of exclusive ownership thereof, having the legal title to a portion,

and an equitable title to the rest thereof, of which equitable title Lull had actual notice.

Lull, therefore, had no actual possession of any portion of the premises, nor had he constructive possession of any portion thereof as tenant in common with Ramsey, the principle that the possession of one tenant in common is the possession of all having no application to this state of facts.

The actual occupancy of the premises by Thorwarth, under the lease from Ramsey and as his tenant, at the time of the conveyance from Lull to Groff, the plaintiff, was, therefore, the exclusive constructive possession of Ramsey.

It clearly appears, then, that at the time of the conveyance from Lull to plaintiff, the defendant Thorwarth was in the actual occupancy of the entire premises, of which partition is sought, as the tenant of Ramsey under a written lease, which was duly recorded. There is no evidence whatever of any inquiry by the plaintiff of Thorwarth as to his rights in the premises.

It has been distinctly held by this court that, " when a purchaser buys land or takes an incumbrance on it, when it is in the actual possession of one other than the vendor, he is required to communicate with such tenant or occupant, and find out the particulars of his claim and interest, and also from whom he holds; and that ' the actual possession of a tenant not only protects him in the enjoyment of his term, but is notice of his landlord's title.' "    *Morrison et al. vs. March,* 4 *Minn.* 422. The question was directly presented in the case cited, and the authorities upon the point underwent a considerable examination, the conflict of decisions thereon being clearly recognized, and the conclusion arrived at was determined by the court to be the better rule.

In addition to the authorities cited in the case in support of the rule laid down by the court, we may refer also to the follow-

ing cases which hold the same doctrine: *Sailor vs. Hertzog,* 4 *Wharton,* 259 ; *Hood vs. Fahnestock,* 1 *Penn. State,* (1 *Barr.*) 470, in which the point is elaborately discussed by Rogers J., delivering the opinion of the court; *Met. Bank vs. Godfrey,* 23 *Ill.* 579 ; *Morrison vs. Kelley,* 22 *Ill.* 610 ; *Dickey vs. Lyon,* (1865,) 19 *Iowa,* 545, in which *Morrison vs. March* is favorably commented on.

Principles of law affecting the title to real estate, when once settled, should not be changed except for very weighty reasons. The decision in *Morrison vs. March* may properly be regarded as a rule of real property. It was rendered soon after the formation of our state government, and has remained unreversed, and doubtless acted upon, ever since. Under such circumstances we do not feel at liberty to regard the question as an open one. *Bidwell vs. Coleman,* 11 *Minn.* 88–9 ; *The Propeller Genesee Chief vs. Fitzhugh, et al.* 12 *How.* 458.

The possession of Thorwarth, therefore, was sufficient notice to plaintiff, at the date of his deed from Lull, of Ramsey's claim to the property, to put the plaintiff upon inquiry thereof; and such inquiry, if it had been pursued with reasonable diligence, would have disclosed to him Ramsey's equitable interest in the property. Neither Lull nor Groff, therefore, at the time of their respective conveyances, was a *bona fide* purchaser for value, without notice of Ramsey's equitable title.

Whether or not there are other other grounds upon which plaintiff is chargeable with notice of Ramsey's equitable title, we need not now consider.

The plaintiff's attorney urges several objections to portions of the evidence received upon the trial.

The bond and mortgage from McBoal, Lull and Gilbert to Lucretia M. Curtis, "Exhibit D," Bazille's affidavit of sale under the mortgage, " Exhibit F," his certificate of sale under the same, " Exhibit E"; the power of attorney from Henry

McLean and Lucretia M. McLean (late Lucretia M. Curtis), to Benj. W. Brunson, "Exhibit G," and the assignment of the bond and mortgage, before mentioned, by McLean and wife, by Brunson as their attorney in fact, to Ramsey and Lull, "Exhibit H," were each and all offered, not for the purpose of constituting a basis of title under them in Ramsey, (nor does the plaintiff claim to deduce any title under these proceedings,) but to show, in connection with the testimony of Ramsey and Brunson, the circumstances attending Ramsey's purchase. Lull was Gilbert's agent in the negotiations for the sale to Ramsey; McBoal, Lull, and Gilbert by his agent Lull, were parties to the negotiations; the payment of the mortgage was one of the terms of sale to Ramsey; all parties at that time supposed and treated the foreclosure proceedings as valid, and that the period of redemption would expire about the 5th of June, the day on which the negotiations were concluded. We think the exhibits were all admissible, in connection with the testimony of the witnesses, for the purpose of explaining the testimony, and as parts of the negotiations, irrespective of their validity.

Exhibits "I," being the mortgage from Lull and wife to Whitacre, Starbuck and Chandler, upon the undivided half of lot ten in block twenty-six; "K," the assignment of Chandler of his interest in said mortgage to Whitacre and Starbuck; "L," and "M," the notice of foreclosure sale under the mortgage, and the affidavit of publication of such notice; the affidavit of sale by Caldwell, sheriff, of the undivided half of lot 10 in block 26, to Thomas S. Whitacre and George C. Starbuck, to satisfy the amount due on the mortgage and taxes paid by the mortgagees, with the receipts for payment of such taxes by Whitacre and Starbuck; "N," the sheriff's certificate of sale to said Whitacre and Starbuck; "O," the assignment, &c., of such certificate of sale, and of the mortgage, mortgage

debt, and lands and premises embraced in said certificate of
sale and said mortgage, of Starbuck and Whitacre by Starbuck
his attorney in fact, and exhibit " P," the power of attorney
from Whitacre to Starbuck for the purpose of such assign-
ment, &c., were all properly received for the purpose, in
connection with other evidence in the case, of showing title in
Samuel J. Wilkin and through him by the partition deed in
Ramsey, as well as for the purpose of disproving title in the
plaintiff.

This brings us to the consideration of the objections to the
proofs of the existence of the original letter of February 7th,
1850, from Gilbert to Lull, under which the sale of the undi-
vided half of Gilbert's undivided third of lot ten was sold to
Ramsey; the loss of such letter, and the contents thereof.

We have already determined that the original letter from
Gilbert to Lull constitutes Lull, Gilbert's agent, with full
anthority to dispose of Gilbert's interest in lot ten, block
twenty-six, in St. Paul proper, and any part thereof. The
original letter, therefore, would have been competent evidence;
but the defendant Ramsey, claiming that the original letter
was lost, sought to prove it by secondary evidence, to-wit : by
a copy of the original.

The instrument offered as such secondary evidence was an
alleged copy of such letter found among the records of the
register of deeds of Ramsey county, in Book C of Deeds, on
page 431.

The original letter not being entitled to record by law, the
record of it was *extra official,* and as an official record was
not competent evidence, but the copy thus found among the
records could, of course, be authenticated as other private
writings, and would thereupon be admissible.

For this purpose it was necessary for the defendant to give
evidence of the prior existence of the original letter, that the

Groff v. Ramsey et al.

instrument was a correct copy thereof, and that the original was lost or destroyed. These are preliminary proofs addressed to the court, upon which the admissibility of the secondary evidence is determined. While there is some difference in the authorities as to the order in which these proofs shall be received, we think the better rule is that the *order of proof* rests in the sound discretion of the court to which they are offered, and while reviewable in the appellate court, the exercise of such discretion will not be interfered with except in case of its abuse.

As to the sufficiency of the evidence, the rule is, if the instrument is lost, the party seeking to introduce secondary evidence thereof " is required to give some evidence that such a paper once existed, though slight evidence is sufficient for the purpose, and that a *bona fide* and diligent search has been unsuccessfully made for it in the place where it was most likely to be found, if the nature of the case admits such proof." *Thayer vs. Barney,* 12 *Minn.* 502; 1 *Greenl. Ev.,* § 558.

In determining the sufficiency of such proof upon an appeal to this court, we will not confine ourselves to the evidence upon these points received prior to the admission of the secondary evidence to which they were addressed; but if it appears from all the evidence in the case that facts sufficient to authorize the secondary evidence were before the court, a new trial will not be granted.

Without stating particularly the testimony of the witnesses, we are clearly of opinion that the testimony of Lull, Brunson and Dewey, given before the copy was received in evidence, and that of Ramsey received subsequently, sufficiently show the prior existence of the original letter; that the copy offered was a correct copy of the original, and, in connection with the entry in the reception book of the register of deeds, as

Groff v. Ramsey et· al.

hereinafter considered, shows that the original was in the possession of Lull; and that the testimony of Lull· proves the loss of the original letter.

Before the witnesses Lull, Brunson and Dewey testified upon the subject of the letter, Book C of. deeds, containing the alleged copy of the letter was shown to them respectively, and their testimony was received after seeing it, to which the plaintiff objected.

So far as the evidence of the witnesses goes to the fact that the copy offered was a correct copy of the original, the exhibition of the copy was clearly authorized. The only doubt can be in regard to its exhibition to them before their testimony as to the prior existence of the original. This was a matter to be determined by the court below in the exercise of a sound discretion, and the action of the court will not be reversed except in case of abuse of such discretion. In this case we see no reason to suppose that such discretion was not properly exercised, or that any injury. was done to the plaintiff.

The entry in the reception book of the register of deeds was not admissible as an official record, because the entry was not authorized by law. The register of deeds, however, was required by law to keep a reception book of this particular kind, in this particular mode, in which he was required to enter, as soon as they were received, in the order of their reception, all deeds and other instruments left for record, and all copies left as cautions or notices of liens. *Rev. Stat. p.* 62.

There is no dispute as to the fact that the book containing the entry in question was the official reception book kept at the time by the register of deeds of Ramsey county, in pursuance of the statute referred to, nor that such entry was found in its proper order among the official entries in the reception book in the usual form of such official entries. It appears

that the letter from Gilbert to Lull was, by agreement between Lull and Ramsey, left by the former with the register of deeds to be recorded, and was in fact recorded in Book C of deeds on page 431, as indicated in the entry. The only reasonable presumption, therefore, is that all the parties, including the register of deeds, supposed that the letter might properly be recorded ; that the entries in the reception book were in fact made by the register of deeds, a person entirely disinterested at the time the facts witnessed by it transpired, and that Lull made his signature in the reception book under the column "to whom delivered," which he testifies was genuine, under the supervision of the register of deeds.

These facts established *prima facie* the verity of this unofficial entry.

This entry, noting facts which transpired about nineteen years previous to the trial, being thus verified, and found in the place where it would have been made by the register of deeds if he had supposed, as it appears he did suppose, he was authorized to record the letter, and where Lull would have made his signature after receiving the paper, if it had been delivered to him after being recorded, is a circumstance tending to show that the paper was delivered, and under all the circumstances, was admissible *upon the preliminary question addressed to the discretion of the court,* in connection with the testimony of Lull upon the question of the delivery to him by the register of deeds, of the letter in question after it was recorded.

But further, we are clearly of opinion that, independent of the entry in the reception book, the testimony of Lull is entirely sufficient, upon the preliminary inquiry, to show that the letter was delivered to him after it was recorded.

Testimony having been received as to the prior existence of the original letter from Gilbert to Lull, its loss, and the

correctness of the copy before mentioned, the witness Brunson testified that he had a conversation with Gilbert at Stillwater the next year after Gilbert left here, the witness thought in 1850, which he stated as follows: " He (Gilbert) told me he had no interest in the property and claimed none. He said he had given it up to McBoal and Lull ; all his interest and claim to the property. Don't know of Gilbert's owning any other property here at that time; don't think he did." To this testimony the plaintiff's counsel objected.

The only purpose for which it is claimed this testimony was admissible was to corroborate the testimony which had already been given as to the execution of the original letter from Gilbert to Lull, which was lost.

This is certainly the only purpose for which it would be admissible, and we are inclined to think it was not admissible for that purpose, since it tended to show not that Gilbert had given up his interest in the property to Lull individually, but to Lull and McBoal jointly. But as we are satisfied that the other evidence in the case establishes the letter to Lull, and since it distinctly appears from the written findings of the court that this letter and the deed of Lull, as attorney in fact of Gilbert to Ramsey, constitute the only basis upon which the title of the defendant Ramsey to any portion of Gilbert's interest in the lot rests, if this evidence were excluded the result must be the same. Therefore, if the evidence was improperly received, it is not ground for reversing the case.

The plaintiff, Groff, being upon the stand, was asked by his counsel the following question: "State whether or not you had any knowledge of any verbal agreement between Alexander Ramsey and Samuel Gilbert, Jr., acting by C. P. V. Lull, or of any such agreement between Ramsey and McBoal and Lull, or either of them, in reference to the purchase by said Ramsey of the property in question, prior to July 20th, 1869?"

Groff v. Ramsey et al.

which was objected to by defendant's counsel and excluded by the court. There was no evidence tending to show actual knowledge by Groff of any such agreement as that referred to in the question; the testimony tended to show that Groff had sufficient notice to put him upon inquiry as to Ramsey's equitable title. Groff's actual knowledge was therefore immaterial, and the question was properly rejected.

The plaintiff objects that the defendant is not entitled to the affirmative relief granted. The only ground upon which the plaintiff's counsel bases this objection here, is that no facts are stated in the answer, which would entitle Ramsey to a specific performance of the alleged contract of sale as against either Gilbert or Groff.

The defense numbered three in the answer states that, on the 7th of February, 1850, James McBoal, Samuel Gilbert, Jr., and C. P. V. Lull were the owners in fee simple of all lot ten, in block twenty-six, in St Paul proper, &c., as tenants in common in equal shares, each of them being so the owner in fee simple of an equal undivided one-third part thereof; that on that day Gilbert, "for a valuable consideration paid to him, agreed to give Lull full power of disposition over all his interest in said lot, and, for the purpose of carrying out said agreement, on that day executed and delivered to Lull an instrument in writing, of which a copy marked Exhibit 'A,' (being a copy of the letter from Gilbert to Lull,) is hereto annexed and made part of the answer;" that the lot referred to in the instrument is the same lot ten above mentioned; that afterwards and on the 4th of June, 1852, Gilbert being still vested with the legal title of the undivided third of the lot, Lull, acting in the name of Gilbert, and the said Gilbert, agreed with said Ramsey to sell and convey to said Ramsey in fee simple one equal undivided half part of the said undivided one-third part so vested in said Gilbert, for a full and

valuable consideration, which was thereupon paid by Ramsey; and on the same day, in order to fully carry into effect the agreement so made as aforesaid, and with intent and purpose of vesting in said Ramsey in fee simple the interest so purchased as aforesaid, the said Lull, acting in the name of the said Gilbert, and the said Gilbert, did execute, acknowledge and deliver to said Ramsey a deed of conveyance of said interest, of which a true copy is annexed to the answer ; that said deed was duly recorded &c., on the 7th of June, 1852, &c. And after setting up the conveyances vesting the title to the remaining portion of the premises in dispute in Ramsey, the answer further alleges that, by reason of the premises, the said Ramsey has continued in open, exclusive, undisturbed and notorious possession of the said property ever since June 23d, 1860, and that he and defendant Thorwarth, claiming under him as lessee, since that date and before this action, and before any claim to said property was made by the plaintiff, erected valuable improvements and buildings thereon of the value of more than $3,000, and have paid the taxes thereon. That of all of these facts the plaintiff has always had notice.

The findings of the court sustain these allegations. We have already determined that the letter from Gilbert to Lull conferred on the latter the power to sell and contract for the sale of the premises, and that the deed from Lull, attorney in fact of Gilbert, to Ramsey, operates as a contract to convey. Here then is a written contract by Gilbert, through Lull his attorney in fact, with Ramsey, to sell. Groff, by reason of notice on the part of Lull his grantor, and himself, stands in exactly the same position with Gilbert, and Ramsey is entitled to enforce the written contract against the plaintiff.

We think the facts stated in the answer altogether sufficient to entitle the defendant Ramsey, to a specific performance of the contract. The contract being in writing, the

question of possession and improvement as a ground for specific performance is altogether out of the case.

We think this disposes substantially of all the points raised in the case. The order denying a new trial affirmed.