(Opinion published 52 N. W. Rep. 962.)

---

ROSCOE F. HERSEY *et al. vs.* EZRA F. LAMBERT.

Argued June 9, 1892. Decided July 1, 1892.

**Unauthorized Deed Treated as a Contract to Convey.**

Where an agent lawfully authorized to contract to sell real estate has attempted to convey the same by deed under a defective power of attorney, the deed will be treated in equity as a contract for the sale thereof within the statute of frauds.

**Evidence Considered to Show Notice to Subsequent Purchaser.**

Evidence considered, and *held* sufficient to put a purchaser upon inquiry, and to show that he took the risk of an outstanding title or equity in a third party, and to sustain the finding of the court that he was not a purchaser in good faith.

**Inadequate Consideration Paid and Quitclaim Deed Taken.**

Among other things, the fact that the purchaser accepted a quitclaim deed of the land for a comparatively small consideration from a party who had made no claim to the same for more than twenty years, *held* material evidence on the question of the good faith of the transaction.

**Pleading Insufficient to Sustain Equitable Claim.**

Proof of the equitable title of the assignee of the interest of a purchaser under a contract for the sale of land is not sufficient to sustain an allegation of ownership in fee.

Appeal by defendant, Ezra F. Lambert, from a judgment of the District Court of Kanabec County, *Crosby*, J., entered February 25, 1892.

The plaintiffs, Roscoe F. Hersey and others, brought this action under 1878 G. S. ch. 75, § 2, to determine the adverse claim of the defendant to one hundred and twenty acres of vacant and unoccupied pine timber land in Kanabec county. Benjamin F. Smith of Morgantown, Va., on August 18, 1858, received a patent for it from the United States. Richard B. Carr of the same place owned other lands in this state. They were neighbors, and the two on May 23, 1862, made a power of attorney to one Mitchell, whereby they jointly authorized him to sell and convey any and all lands held by them in the state of Minnesota, and to receive the purchase money and give acquittances in their names. Under this power Mitchell on May 2, 1867, sold and conveyed this land in which Carr had no interest, to Eugene M. Wilson, and received the price, $180, and remitted the money to Smith. He received and retained the money, knowing it was received by his agent as the price of this land. This deed and power of attorney were never recorded in Kanabec county. The plaintiffs are the remote grantees of Wilson.

The defendant sent one Goforth to Smith in January, 1891, who had then removed to Baltimore, Md., and obtained from him a quitclaim deed of this land, and paid him $200, therefor. The land was then worth $10,000, and defendant knew that plaintiffs claimed to be the owners thereof and to have derived their title through Wilson. The trial court found that defendant was not a purchaser

in good faith, and that he had notice of plaintiffs' equitable rights; and ordered judgment for plaintiffs and it was so entered.

*John B. & W. H. Sanborn,* for appellant.

The defendant purchased the property from Smith relying on the record in Kanabec county for information as to whether Smith had ever conveyed it. He found there no conveyance from Smith. Defendant had no notice or knowledge of any facts at, or prior to the time he purchased this land of Smith, sufficient to put him on inquiry even as to the existence of this unrecorded deed from Smith to Wilson. The rule is well established that an inference of fraudulent intent on the part of a junior purchaser must, in the absence of actual notice, be founded on clear and strong circumstances, and the inference must be necessary and unquestionable. *Williamson* v. *Brown,* 15 N. Y. 354; *Jackson* v. *Given,* 8 John. 137; *Norcross* v. *Widgery,* 2 Mass. 505; *Jackson* v. *Van Valkenburgh,* 8 Cow. 260; *Wilson* v. *McCullough,* 23 Pa. St. 440; *Churcher* v. *Guernsey,* 39 Pa. St. 84; *Maul* v. *Rider,* 59 Pa. St. 167; *Pittman* v. *Sofley,* 64 Ill. 155; *Briggs* v. *Rice,* 130 Mass. 50; *Condit* v. *Wilson,* 36 N. J. Eq. 371.

The question is not whether the purchaser had the means of obtaining, and might by prudent caution have obtained, a knowledge of the unrecorded deed, but whether the not obtaining it was an act of gross and culpable negligence. 2 Sudgen, Vendors, (14th Ed.) 529; *LeNeve* v. *LeNeve,* 2 Lead. Cas. Eq. (3d Am. Ed.) 38, 138, 152; *Dexter* v. *Harris,* 2 Mason, 536; *Flagg* v. *Mann,* 2 Sumn. 555; *Wilson* v. *Wall,* 6 Wall. 83.

The fact that the defendant paid for his deed from Smith less than this land with a clear title might be worth, cannot justify the finding that he was not a purchaser in good faith. The title of Smith was incumbered by two tax deeds in evidence, and Smith knew of these tax deeds, and so did Goforth. The fact that this property was so encumbered was taken into consideration by both parties in fixing the price paid for this land. The existence of these tax deeds upon the land, explains why Smith gave a quitclaim deed to the defendant instead of a warranty deed. With the question whether the

consideration is adequate, the court has nothing to do. *Boydson* v. *Goodrich*, 49 Mich. 65; *Basset* v. *Nosworthy*, 2 Lead. Cas. Eq. 1.

The court below held, and properly we think, that these tax deeds did not give to the grantees in them any title to this land. They did not show that the treasurer had any authority to make the sales.

The power of attorney from Smith and Carr to Mitchell, authorized the sale and conveyance only of property in which Smith and Carr were jointly interested, or of which they were the owners as tenants in common. It did not authorize the sale or conveyance of any land owned by Smith alone. *Gilbert* v. *How*, 45 Minn. 121.

Smith could not ratify the act of Mitchell in executing and delivering the deed to Wilson so as to make it a valid deed and cause it to operate to convey the title, either by parol, or by receiving and retaining the money paid by Wilson to Mitchell, or by any other act short of an instrument under seal. *Judd* v. *Arnold*, 31 Minn. 430.

Under the pleadings in this case the plaintiffs ought not to have been permitted to show by testimony that Mitchell was Smith's agent to sell this land, or that he did sell it to Wilson, or that the money received was remitted by Mitchell to Smith, or received or retained by Smith. By the complaint, the plaintiffs claimed a legal title to this land. In their reply they also pleaded a legal title and set out their chain of title. Having specifically pleaded their chain of title, the plaintiffs were restricted in their proofs to that particular title, and evidence of any other title than the legal title, could not be admitted or considered in the case. *Pinney* v. *Fridley*, 9 Minn. 34, (Gil. 23 ;) *Jellison* v. *Halloran*, 40 Minn. 485; *First Nat. Bank* v. *St. Croix Boom Corp.*, 41 Minn. 141; *Pryor* v. *Madigan*, 51 Cal. 178; *Custard* v. *Musgrove*, 47 Texas, 217.

*Clapp & Macartney*, for respondents.

We do not care to spend any time in discussing the question whether or not the defendant was a *bona fide* purchaser of these lands for value, without notice of plaintiffs' title; the court below has found that he was not, and has done so upon ample evidence.

The notice that the defendant had was sufficient to put him upon inquiry, and to compel him to inquire of the plaintiffs as to their source of title. Mere inquiry from Smith, was not sufficient. 2 Pomeroy, Eq. Jur. § 601.

There can be no doubt that as between the plaintiffs and Smith, the plaintiffs were at least the equitable owners of this property. *Jones* v. *Bliss,* 48 Minn. 307; *Smith* v. *Sheeley,* 12 Wall. 358; *Williams* v. *Merritt,* 23 Ill. 623; *Groff* v. *Ramsey,* 19 Minn. 44, (Gil. 24.)

The recording act 1878 G. S. ch. 40, § 21, was passed only to protect purchasers in good faith and for a valuable consideration, who buy real estate in reliance upon the record. *Strong* v. *Lynn,* 38 Minn. 315; *Merchant* v. *Woods,* 27 Minn. 396.

We cite the following authorities in which the question of good faith has been presented in a great variety of forms, and under a great variety of circumstances. This defendant on the undisputed evidence is not a *bona fide* purchaser in good faith. *Martin* v. *Brown,* 4 Minn. 282, (Gil. 201;) *Lebanon Sav. Bank* v. *Hollenbeck,* 29 Minn. 322; *Pringle* v. *Dunn,* 37 Wis. 449; *Knapp* v. *Bailey,* 79 Me. 195; *Grimstone* v. *Carter,* 3 Paige, Ch. 420; *Chicago* v. *Witt,* 75 Ill. 211; *Curtis* v. *Mundy,* 3 Met. 405; *Shotwell* v. *Harrison,* 30 Mich. 179; *Hume* v. *Franzen,* 73 Iowa, 25; *Williamson* v. *Brown,* 15 N. Y. 354; *Ellis* v. *Horrman,* 90 N. Y. 466; *Daughaday* v. *Paine,* 6 Minn. 443, (Gil. 304;) *Jellison* v. *Halloran,* 44 Minn. 199; *Musick* v. *Barney,* 49 Mo. 458.

There can be no question upon the evidence but that Smith has fully ratified and confirmed all the acts of his agent Mitchell, in selling this land to Wilson, and in attempting to convey the title under the power of attorney from Smith and Carr; neither can there be any doubt that Mitchell had parol authority to sell this land. Such power could be and was, conferred by parol, and the clear intention of all the parties, as shown by the evidence, was to authorize Mitchell to sell it.

It is true that in the complaint the plaintiffs set up legal title in fee. The reply admits that Smith acquired the legal title to the

land from the United States and avers that he sold the lands to Wilson. It seems to us that this reply sets up substantially all the facts which plaintiffs were bound to disclose by their pleadings in order to claim an equitable title to this property. It may be that the reply, in so far as it sets up the equitable title, is a departure from the case made by the complaint.

VANDERBURGH, J. The controversy between these parties is over the title to a quarter section of land in Kanabec county. This land was entered in 1856, at the United States land office at Stillwater, by one Eugene M. Wilson. The certificate of location was assigned to Benjamin F. Smith, to whom a patent was issued in August, 1858. Neither the patent nor assignment of the certificate of entry was recorded. Smith was a nonresident. There is evidence, however, sufficient to support the finding of the court that he had an agent in the state, who was authorized to act for him and to sell his lands situated therein. The same party was also agent for one Carr, and on the 23d day of May, 1862, the two executed a joint power of attorney to him, authorizing and empowering him to sell and convey by warranty deed any and all lands held by them in the state of Minnesota, and thereafter, in the year 1867, while he was still the agent of Smith, and assuming to act under the power of attorney referred to, he sold and conveyed the land in question as the property of Smith and in his name to Eugene M. Wilson, under whom the plaintiffs claim through mesne conveyances, which, with the deed to Wilson, were all duly recorded before January 1, 1891. The consideration for this deed paid by Wilson was remitted to Smith by his agent, and received and retained by him with knowledge of the facts concerning the sale and conveyance, which were approved by him and ratified as far as it could be done by parol or writing not under seal. On the 19th day of January, 1891, the defendant procured a quitclaim deed to be executed to him by Smith of the same land for the consideration of $200. The court finds in respect to this purchase that the defendant, at the date thereof, knew that the land was entered by Wilson, and that the plaintiffs claimed to be the owners

thereof, and to have derived title from Wilson, and that the defendant was not a purchaser in good faith. It is also found that the land was then worth $10,000.

The evidence is sufficient to support these findings. The circumstances of the sale, which are more particularly referred to below, together with the state of the record, were sufficient to put the defendant on his guard, and he took the risk of any outstanding title or equities. The court was justified in treating him as a "prowling assignee," occupying no better position than Smith, his grantor, and subject to the same equities in favor of the plaintiffs. A careful examination of all the testimony will, we think, make this quite plain. It tends to show that Smith well knew of the conveyance to Wilson by his agent, but the particulars had doubtless escaped his mind at the time he made the deed to defendant. And for more than twenty years he had made no claim, paid no taxes, and exercised no acts of ownership over the land. On the day he made the deed to defendant the defendant's agent applied to him to purchase the land at his place of business in Baltimore. Smith did not make any claim to the land, and told him he did not know that he owned it; but the agent then informed him that the record showed that he did, and that he had not conveyed it. He had no opportunity to refresh his recollection or communicate with his former agent in Minnesota or look up correspondence or ascertain the value of the land, because the defendant's agent insisted upon closing the deal without delay. Smith was also informed by him that there were other parties claiming the land, and there was probability of a lawsuit, but that defendant was willing to give a small consideration for a quitclaim deed, to which Smith agreed with the understanding that defendant was to take all the risks, and thereupon Smith executed the deed and received the sum of $200, a very small fraction of the value of the land. Defendant knew that plaintiffs were claiming the land under Wilson. He understood that the title would have to be contested, and he was willing to take a speculative or fighting title for a comparatively nominal consideration, and take the chances. He therefore took all the risks, whatever they might be. He clearly did not expect to get, and did not get, any better title than Smith had, and that was subordinate

to plaintiffs' title or equity.   It is not material then, under the circumstances of this case, that the defendant had no notice, actual or constructive, of the deed to Wilson, through Smith's attorney.   *Hume* v. *Franzen*, 73 Iowa, 25, (34 N. W. Rep. 491.)

The joint power of attorney executed by Smith and Carr did not authorize the conveyance of the land held by Smith in severalty, so that the deed executed by Smith's agent, as his attorney in fact, to Wilson, was not authorized by the power, and the deed was invalid as an executed conveyance of the land.   *Gilbert* v. *How*, 45 Minn. 122, (47 N. W. Rep. 643.)   The legal title did not pass thereby; but, inasmuch as Smith might then have authorized his agent to make executory contracts for the sale of his land by parol, or ratified such contracts when made, as the evidence tends to show he did do in this instance, equity will not permit the deed to fail altogether, but will treat it as a contract for the sale of the land fully executed on his part by the purchaser.   Upon the evidence in this case, these plaintiffs may be deemed the assignees of his equitable title, and the equitable owners thereof.   *Groff* v. *Ramsey*, 19 Minn. 44, 54, (Gil. 24;) *National Bank of Norwalk* v. *Lanier*, 7 Hun, 627, and cases; *Lebanon Sav. Bank* v. *Hollenbeck*, 29 Minn. 325, (13 N. W. Rep. 145.)

Strictly, however, this conclusion is not warranted by the pleadings and findings of fact in this case.   The plaintiffs allege that they are the owners in fee of the land.   They were not, therefore, entitled to prove the parol authority of the agent, and, the facts showing an equitable title in them, and as such evidence was received over the objections and exceptions of the defendant, there must be a new trial. The answer and reply did not help out the complaint.   The case was tried and determined, evidently, upon the theory that Wilson acquired the legal title under Smith's deed to him.   As there was no amendment of the pleadings sought or made, the plaintiffs' case was not made out, and the decision cannot stand.

Judgment reversed.

(Opinion published 52 N. W. Rep. 963.)