HENRY COURSOLLE v. FREDERICK WEYERHAUSER and Others.[1]

Nos. 10,560—(210).

October 18, 1897.

**Infant—Appointment of Attorney—Ratification.**

The appointment by a minor of an attorney to sell and convey real estate, and a conveyance by the attorney under such appointment, are not void, but merely voidable, and capable of ratification by the infant on attaining his majority.

**Estoppel and Laches — Title Obtained by Location of Half–Breed Scrip.**

Conceding that land entered with Sioux half-breed scrip, issued under the act of congress of July 17, 1854 (which is not assignable), becomes the absolute property of the scripee, unaffected by any prior deed, contract, or act of the scripee, yet as soon as it is located the land is subject to alienation or other disposition by him, and the title may be affected or lost by his subsequent conduct, the same as if it had been acquired in any other way.

**Same—Acts of Scripee before Location.**

While the acts of the scripee before the location of the scrip may not be resorted to as original evidence of laches or estoppel by conduct, they may be considered for the purpose of characterizing his subsequent conduct.

**Same—Evidence.**

Facts considered, and *held*, that the plaintiff is estopped by his conduct from asserting that a deed of land entered with his Sioux half-breed scrip is void because executed before the land was entered.

[1] Reported in 72 N. W. 697.

Appeal by plaintiff from a judgment of the district court for Itasca county, entered pursuant to findings by Holland, J. Affirmed.

*Francis G. Burke*, for appellant.

*Wilson & Van Derlip*, for respondents.

MITCHELL, J.

This was an action to determine adverse claims to 320 acres of vacant and unimproved land in Itasca county. As the appeal is taken from the judgment, without either case or bill of exceptions, the only question is whether the facts found sustain the judgment.

These facts, so far as material, are substantially as follows: The plaintiff is a half-blood of the Sioux or Dakota tribe, and has been continuously a resident of Ramsey county, in this state, for at least 25 years. In 1856, pursuant to the act of congress of July 17, 1854, there was issued to him 320 acres of what is commonly called "half-breed scrip." As is well known, this scrip was not assignable, but had to be located, and the land entered in the name of the scripee. In January, 1870, when he was about 20 years old, but represented himself to be of full age, having previously, for a valuable consideration paid to him, delivered and agreed to sell his scrip to one Dorr, the plaintiff executed two powers of attorney, by one of which he appointed Dorr his attorney "to select and locate the lands to which he was entitled by reason of said scrip," and by the other he constituted Dorr his attorney, with authority to sell and convey "any and all lands to or in which he then was, or might thereafter become, in any way entitled or interested by virtue of said scrip." Assuming to act under these powers, Dorr, in January, 1874, in the name of the plaintiff, sold and conveyed the land in controversy, with covenants of title, to one Brown, and in October, 1874, located the scrip on this land. In August, 1875, the commissioner of the general land office canceled this entry, on the ground that the plaintiff was not of age when he executed the power of attorney under which the location and entry were made. In May, 1878, Dorr, having learned of the cancellation of the entry, went to plaintiff (who was then about 28 years of age), and told him that he had made the entry and conveyed the land to Brown; that the entry had been canceled, and the reason therefor; and that Brown desired

him (plaintiff) to execute another power of attorney, under which the land might be re-entered, in order to protect the title which he (Brown) had bought, and had believed was conveyed to him. Thereupon the plaintiff executed a power of attorney authorizing Brown to locate the scrip, and thereafter (in August, 1878) Brown, by virtue of this power, relocated the scrip on the same land, but, of course, in plaintiff's name. On this entry, patents to the land were issued in the name of the plaintiff, and delivered to Brown, in 1885, but not recorded until 1887.

Beginning in 1881, and extending over the six succeeding years, various conveyances of the land were made by Brown or his grantee to divers persons, whereby in 1887 Brown's title was all vested in one Davis, under whom the present defendants, by conveyances subsequently made, now claim title. All these deeds were recorded soon after the respective dates of their execution. Each of the defendants acquired their interests in good faith, and for a valuable consideration, and, as the court finds, in full reliance upon the title appearing of record in their grantors, and believing that such grantors were the owners of the interests in the land respectively conveyed by them. From the time of the original entry in 1874 down to the time of his conveyance of his interest therein, Brown at all times claimed and believed himself to be the owner of the land, and conveyed the same in that belief. From the time of the execution of the powers of attorney to Dorr, in 1870, down to the commencement of this action, in June, 1895, the plaintiff has neither by word nor act asserted any claim or title to or in the land. It has been taxed every year since, including 1876, all of which taxes have been paid by Brown, or those claiming under him. None of the defendants had any notice or knowledge of any claim to or interest in the land on part of the plaintiff until the commencement of this action, other than whatever notice may appear from the foregoing facts. The timber on the land is now worth $17,500, and the land has an additional prospective value for mineral. There is no finding as to the value of the land at any former date, either in 1874 or 1878; but, in view of what are matters of common knowledge, it is not an unwarranted presumption that it was but a small part of its present value.

The contention of the defendants is that the plaintiff is now debarred from claiming title to the land, or asking any relief in the premises, by (1) laches; (2) abandonment; (3) estoppel. The facts certainly present strong equitable reasons in favor of this contention. All that the records in the office of the register of deeds showed up to the recording of the patent, in 1887, as to the source of the title to the land, was the power of attorney from plaintiff to Dorr, and the deed executed by the latter, as such attorney, to Brown. In that respect it was not different from hundreds of other titles in the state where the patents from the United States have never been recorded. Of course, the purchasers were chargeable with notice of the contents of every instrument through which their claim of title was derived; and the contents of the power of attorney from plaintiff to Dorr required them to examine the records of the United States land office to ascertain whether this land had been entered with plaintiff's scrip, and, if so, when. In that sense, and in that respect, neither Brown nor those claiming under him could be said to be innocent purchasers.

In view of the usual manner of dealing with this half-breed scrip and the land entered or to be entered with it, which are matters of common knowledge, it is evident that the plaintiff intended to and supposed he was disposing of all his interest in the land entered with the scrip, and that he always supposed he had done so until some undisclosed influence induced him to assert the contrary after the lapse of a quarter of a century. His execution of the power of attorney in 1878, with full knowledge of all that had been previously done in the premises, and of the purpose for which that power was desired, followed as it was by his omission for 17 years to assert any claim to the land while others were paying the taxes on it and dealing with it on the faith of the validity of the Brown title, would seem to make out a strong case of laches, and of an abandonment of the land to the Brown title.

But we do not place our decision exclusively on this ground. We are of the opinion that the doctrine of ratification is applicable. Two defects in the Brown title were: First, that plaintiff was a minor when he executed to Dorr the power of attorney to sell and convey the land; and, second, that the conveyance was not author-

ized by the power, because the land had not then been entered with the scrip. We are of the opinion that plaintiff, by his conduct, had fully ratified both the power of attorney and the deed assumed to be executed under it,—at least, as to both these defects. As respects the fact that the conveyance before the entry of the land was unauthorized by the power, there is no difficulty in holding that the conveyance was subsequently ratified by plaintiff's conduct..

We are not unmindful of the general rule that the form of ratification should be the same as required for the original appointment; but until the amendment of G. S. 1878, c. 41, § 12, in 1887 (see G. S. 1894, § 4215), the authority of an agent to make a contract for the sale of land was not required to be in writing. Dickerman v. Ashton, 21 Minn. 538; Brown v. Eaton, Id. 409. And, where an agent authorized to contract to sell conveys under a defective power, the deed will be treated as a good contract to sell. Minor v. Willoughby, 3 Minn. 154 (225); Hersey v. Lambert, 50 Minn. 373, 52 N. W. 963. Ratification may be implied from the principal's acts, and from silence and nonaction as well as from affirmative words and acts. The execution of the power of attorney in 1878 to relocate the scrip for the purpose of protecting Brown's title, after being fully advised of all the facts, followed by an entire omission for 17 years to assert by word or act any claim to the land, or to repudiate what had been done in his name, constituted a ratification on plaintiff's part of what had been done, as far as those things were capable of ratification.

The rule is that the act to be ratified must be voidable merely, and not absolutely void; and the question remains—which to our minds is the most important one in the case—whether the act of a minor in appointing an agent or attorney is wholly void, or merely voidable. Formerly the acts and contracts of infants were, held either void, or merely voidable, depending on whether they were necessarily prejudicial to their interests, or were or might be beneficial to them. This threw upon the courts the burden of deciding in each particular case whether the act in question was necessarily prejudicial to the infant. Latterly the courts have refused to take this responsibility, on the ground that, if the infant wishes to determine the question for himself on arriving at his majority, he should

be allowed to do so, and that he is sufficiently protected by his right of avoidance. Hence the almost universal modern doctrine is that all the acts and contracts of an infant are merely voidable. Upon this rule there seems to have been ingrafted the exception that the act of an infant in appointing an agent or attorney, and consequently all acts and contracts of the agent or attorney under such appointment, are absolutely void. This exception does not seem to be founded on any sound principle, and all the text writers and courts who have discussed the subject have, so far as we can discover, conceded such to be the fact.

On principle, we think the power of attorney of an infant, and the acts and contracts made under it, should stand on the same footing as any other act or contract, and should be considered voidable in the same manner as his personal acts and contracts are considered voidable. If the conveyance of land by an infant personally, who is of imperfect capacity, is only voidable, as is the law, it is difficult to see why his conveyance made through an attorney of perfect capacity should be held absolutely void. It is a noticeable fact that nearly all the old cases cited in support of this exception to the general rule are cases of technical warrants of attorney to appear in court and confess judgment. In these cases the courts hold that they would always set aside the judgment at the instance of the infant, but we do not find that any of them go as far as to hold that the judgment is good for no purpose and at no time.

The courts have from time to time made so many exceptions to the exception itself that there seems to be very little left of it, unless it be in cases of powers of attorney required to be under seal, and warrants of attorney to appear and confess judgment in court. See Freeman's note to Craig v. Van Bebber, 18 Am. St. Rep. 629 (s. c., 100 Mo. 584, 13 S. W. 906); Schouler, Dom. Rel. § 406; Ewell's Lead. Cas. 44, 45, and note; Bishop, Cont. § 930; Metcalf, Cont. (2d Ed.) 48; Whitney v. Dutch, 14 Mass. 457–463; Bool v. Mix, 17 Wend. 119–131.

Hence, notwithstanding numerous general statements in the books to the contrary, we feel at liberty to hold, in accordance with what we deem sound principle, that the power of attorney from plaintiff to Dorr, and the deed to Brown under that power, were

not absolutely void because of plaintiff's infancy, but merely void-able, and that they were ratified by him after attaining his majority.

There is another point made by plaintiff's counsel, although not very distinctly, which should be referred to. It is that the original transaction between plaintiff and Dorr in 1870 was a mere device to transfer the scrip in evasion of the act of congress, and therefore void; also that, in view of the nonassignability of the scrip, the land, when entered with it, must necessarily become the absolute property of the scripee, not impressed with any trust in favor of any third party by reason of any prior deed or other contract, and unaffected by any estoppel by laches or otherwise of the scripee.

There is no express finding that the transaction of 1870 was a device to transfer the scrip, although, perhaps, that might be necessarily inferred from the fact actually found. It may also be conceded that, if it was such a device, any deed executed for the purpose of carrying it into effect could be avoided in a proper action for that purpose against any grantee chargeable with notice of the facts. It may be further conceded, for the sake of argument, that, when land is entered with such scrip, it becomes the property of the scripee, unaffected by any prior acts or contracts on his part. The act of congress merely provides that "no transfer or conveyance of any of said certificates or scrip shall be valid." 10 Stat. 304. An attempted transfer of such scrip does not involve any moral turpitude or any breach of legal duty. It is simply ineffectual. Gilbert v. Thompson, 14 Minn. 414 (544); Dole v. Wilson, 20 Minn. 308 (356).

If the transaction between plaintiff and Dorr in 1870 was a device to effect a transfer of the scrip, there is no finding that defendants had any notice of that fact. In fact, the findings are directly to the contrary. As soon as scrip is located the land is as completely subject to alienation or other disposition by the scripee as any other land. Conceding that his title cannot be affected by anything which he has done or omitted to do prior to such location, yet it may be lost by his subsequent conduct, precisely as if he had acquired it in any other way. The doctrine of laches or estoppel by conduct from thenceforward becomes applicable to its

full extent. And, while the acts of the scripee prior to the location of the scrip may not be resorted to as substantive and original evidence of laches or estoppel by conduct, they may be resorted to for the purpose of characterizing his subsequent conduct.

Let us consider the conduct of plaintiff since 1878 in the light of these suggestions. He had given a power of attorney to sell and convey the land to be entered with his scrip. He knew that an attempted conveyance under the power had been executed. He had executed a power of attorney to relocate this scrip for the express purpose and with a presumed intention of protecting and perfecting the title under that conveyance. He had reason to expect that Brown would rely on this power and the relocation of the scrip under it as having the effect of perfecting his title. He had reason to suppose that the land was being bought and sold on the faith of that title. He knew the land was subject to taxation, and that, if the taxes were not paid by somebody, the patent title to the land would be lost. The records in the register of deeds office did not show that the deed to Brown had been executed before the scrip was located on the land. It is true that the terms of the power of attorney referred those dealing with the land to the records and files in the United States land office, and charged them with constructive notice of whatever those records and files would have disclosed. But, looking at the matter from a practical standpoint, it is a fact of common knowledge that many proposed purchasers never examine anything except the records in the register of deeds office, and, if they find nothing there against the title, never extend their researches to the United States land department. Under this state of facts, the plaintiff, having thus set, as it were, a trap for the unwary, sat still for 17 years without, by either word or act, asserting any claim to the land, and then, after it had been repeatedly bought and sold for a valuable consideration, and had presumably immensely increased in value, and had finally passed into the hands of purchasers who had at least no actual knowledge of any defect in their title, he now, for the first time, and without any excuse for his laches, asserts title to the property. Upon this state of facts, we think the doctrine of laches or estoppel by conduct should be applied, and the plaintiff held estopped from now assert-

ing against the defendants the invalidity of the deed to Brown on the ground that it was executed before the entry of the land with the scrip.

Judgment affirmed.

BUCK, J.

I dissent from the result arrived at in the foregoing opinion.