LEBANON SAVINGS BANK *vs.* LEONIDAS R. HOLLENBECK and others.

July 25, 1882.

**Foreign Bank—Power to Hold and Enforce Real Estate Mortgage.—** A foreign banking corporation, whose charter imposes no restriction upon the character of its loans, whether upon real or personal security, may take and hold a mortgage upon lands in this state, and enforce the same in the courts upon the same footing as other creditors.

**Reformation of Unsealed Mortgage—Subsequent Lienholders.—**Equity will help a defectively-executed mortgage given upon a valuable consideration, and reform and enforce the same as against the maker and subsequent assignees and lienholders having notice. So *held* of a mortgage executed and recorded unsealed.

**Notice—Filing of Lis Pendens on Foreclosure of Defective Mortgage Prior to Completion of Subsequent Judgment Lien.—**In an action to reform and foreclose such a mortgage, a notice of *lis pendens*, duly filed prior to the record of a deed from the mortgagors to a grantee against whom a judgment had been recovered, will save to the plaintiffs their prior lien as against such judgment, because such judgment, by the terms of the recording act, (Gen. St. 1878, c. 40, § 21,) only takes precedence where the judgment debtor's title is of record.

**Principal charged with Agent's Knowledge not acquired in the Agency.** Knowledge of an agent acquired previous to the agency, but actually present in his mind during the agency, and while acting for his principal in a particular transaction or matter, will, as respects such transaction or matter, be deemed notice to him, and will bind him as fully as if originally acquired by him.

Appeal by defendants Booge and Goewey from a judgment of the district court for Nobles county, where the action was tried by *Dickinson*, J., without a jury.

*Daniel Rohrer*, for appellants.

*Waite & Freeman*, for respondents.

VANDERBURGH, J.* By an act of the legislature of the state of New Hampshire, the plaintiff was duly incorporated as a savings

*Dickinson, J., having tried the case in the district court, took no part in the decision of this appeal.

bank, and was by its charter "vested with all the powers and privileges * * * of corporations of a similar nature," and was thereby further expressly authorized "to take, hold, and dispose of any real estate whatever that may be *bona fide* conveyed to or taken by said corporation in satisfaction or discharge of debts, demands or liabilities which shall have been previously contracted or incurred;" and, in reference to the deposits of money received by it, to "use, manage, and improve the same for the benefit and best advantage" of the depositors. There is in the charter no prohibition or other limitation, express or implied, upon its power to loan money upon security in or out of the state of New Hampshire.

The plaintiff corporation, in July, 1875, loaned the sum of $400 to defendant Leonidas R. Hollenbeck, who was then owner in fee of the land in question in this action, being in the county of Nobles, in this state, and took his note therefor, with interest at 10 per cent., payable annually, secured by a mortgage of the land, which was actually recorded in that county July 23, 1875. But the instrument, though otherwise duly executed and acknowledged by Hollenbeck and wife, as disclosed by the record, was not sealed, and, for the purposes of this case, must be treated as not having been originally sealed. It was afterwards, however, duly sealed, and again recorded September 5, 1877.

On the 29th day of September, 1876, Hollenbeck and wife conveyed the mortgaged premises to the defendant Morse, who took with full knowledge of the mortgage, and as the consideration of such conveyance to him, undertook to assume and pay off the mortgage. His deed was not, however, recorded until May 14, 1877. Previous to this last date, the plaintiff, as by the terms of the mortgage it might do on default of payment of the interest, had commenced a foreclosure thereof by action, making Hollenbeck and wife and Morse defendants, neither of whom has appeared in the action.

On the date of the commencement of the action, April 27, 1877, a notice of the pendency thereof, as affecting the real estate in question, was duly recorded. The defendants Booge, judgment creditors of Morse, and defendant Goewey, assignee in bankruptcy of two of such creditors, were afterwards duly joined as defendants in the foreclos-

ure action. Prior to the record of Morse's deed, and on or about March 17, 1877, the defendants Booge recovered and docketed their judgment against Morse in the sum of $533, and afterwards bid in these premises on a sale upon execution issued upon such judgment, from which there has been no redemption. These judgment creditors resist the foreclosure, and insist (1) that the plaintiff corporation had no power or authority under its charter to take or hold security by mortgage upon real estate; (2) they deny that the mortgage was properly executed or recorded, or that it has any validity as against them; (3) they deny notice, actual or constructive, of the same, and insist upon the priority of the lien of their judgment over any lien, charge, or claim of plaintiffs by virtue of the mortgage. The court ordered judgment for the plaintiffs, declaring the lien of the mortgage superior to that of the judgment, and directing a foreclosure as prayed in the amended complaint; and from the judgment entered therein the said defendants, judgment creditors, appeal.

1. Unless restricted by its charter, expressly or by implication, a banking corporation may secure its loans by taking either real or personal security therefor, as any other creditor may do, and such authority is clearly within the general powers conferred by the first section of plaintiff's charter, quoted above. Whether it was a wise or proper exercise of discretion for the plaintiff to have made this particular loan upon the security in question is not material. It is responsible to the proper authorities for its management, and to the sovereignty which created it for any misuser of its franchises. But we do not think that, by any fair construction, the provisions we have quoted, which impliedly limit the powers of the bank in the matter of purchasing and dealing in real estate to the cases enumerated, amount to a restriction of its right to loan money upon security, real or personal. The object of the restriction was to prevent the capital of the bank from being unduly absorbed in real-estate investments, and the bank from engaging in land speculations, and not to prevent its making loans upon interest-bearing securities, of which mortgages prudently secured by real estate of the proper amount and relative value, according to the usual custom in such cases, are recognized as among the best for the security of savings

deposits and other trust funds. *Silver Lake Bank* v. *North*, 4 John. Ch. 370.

We think the bank is not prohibited from taking lands upon foreclosure "in satisfaction or discharge of debts," but is clearly authorized so to do. The doctrine suggested by the chancellor in the case just cited, that it would belong rather, as he thought, to the government of the state which gave the charter to inquire into any abuse of its powers by the corporation plaintiff in such a case, than for the court to set aside a *bona fide* contract in a collateral way, seems to be approved in *National Bank* v. *Matthews*, 98 U. S. 621, and in several well-considered cases there cited. It is not necessary, however, to consider the question here.

2. Upon the principle that equity looks upon things as done which ought to be done, it is clear that it would supply the defective execution of this instrument, and reform and enforce it as a valid mortgage as against defendants Hollenbeck, who undertook to execute it, and Morse, who agreed to assume it, and who took the land charged with it, and would in like manner bind the conscience of all subsequent lienholders who are chargeable with notice of plaintiff's equities in the premises. *Ross* v. *Worthington*, 11 Minn. 323, (438); *Bank of Norwalk* v. *Lanier*, 7 Hun, 623; *Wadsworth* v. *Wendell*, 5 John. Ch. 224; *Schenck* v. *Ellingwood*, 3 Edw. Ch. 175; *Fletcher* v. *Morey*, 2 Story, 555.

3. This brings us to the inquiry as to the sufficiency of the facts found in this case to charge the defendants, judgment creditors, with such notice. Apart from the effect of the recording act, it is well settled that the specific equitable lien of the plaintiff would have been preferred to the general lien of a subsequent judgment. *Bank of Norwalk* v. *Lanier, supra*; *White* v. *Carpenter*, 2 Paige, 217; *Lane* v. *Ludlow*, 2 Paine, C. C. 591. But, as was correctly held by the learned judge who tried the case, the recording act (Gen. St. 1878, *c.* 40, § 21) did not become operative, so as to affect the prior rights of plaintiff, until the record of the deed to Morse, against whom the judgments were docketed; and accordingly the *lis pendens* filed by the plaintiff prior to such record fully saved all its equities as to the question of notice. *Dickinson* v. *Kinney*, 5 Minn. 332, (409.) The

terms of the statute make the unrecorded instrument void "as against every judgment lawfully obtained against the person in whose name the title to such land appears of record prior to the recording of such conveyance."

The trial court also finds that the defendants Booge "had, through their attorney, prior to the recovery of their judgment, such notice and knowledge concerning the claim of mortgage by plaintiff upon the land as would put a man of ordinary prudence upon inquiry." This finding is supported by the evidence. And, more specifically also, in reference to such notice, it appears that the attorney for the judgment creditors, prior to his employment by them, had knowledge of the mortgage and the defect in its execution, and also had notice of the state of the record, and that he was influenced by these facts, and acted upon them, in undertaking and prosecuting the suit for them. So that, notwithstanding the invalidity of the first record of the mortgage, these defendants were chargeable, not only with constructive notice, by the record of the *lis pendens*, of the rights and equities of the plaintiff, but also with actual notice through their agent. The notice and knowledge which the agent had in this case was to all intents and purposes equivalent to notice acquired during the agency. Knowledge of an agent acquired previous to the agency, but appearing to be actually present in his mind during the agency and while acting for his principal in the particular transaction or matter, will, as respects such transaction or matter, be deemed notice to his principal, and will bind him as fully as if originally acquired by him. *The Distilled Spirits*, 11 Wall. 356; *Suit* v. *Woodhall*, 113 Mass. 391; *Abell* v. *Howe*, 11 Am. Law Reg. (N. S.) 144; *Shafer* v. *Phœnix Ins. Co.*, 53 Wis. 361; *Dresser* v. *Norwood*, 17 Com. B. (N. S.) 466. This rule, which is substantially approved in the above and other cases, if carefully applied, is deemed a salutary one, and calculated to promote justice and fair dealing. As said in *Suit* v. *Woodhall, supra,* notice or knowledge of the agent, of facts which enter into and give character to acts done for the principal, affects the principal. He cannot accept the act of the agent so far as it is advantageous, and reject any infirmity which attaches to it.

Judgment affirmed.