THE WESTERLY SAVINGS BANK *et al. vs.* THE STILLMAN MANUFACTURING CO. *et als.*

A deed unacknowledged and unrecorded, but valid between the parties to it and their heirs, will be deemed valid as to other persons having actual notice of it, so that such other persons with notice will be affected by such deed as if acknowledged and recorded in due form.

The statute, Pub. Stat. R. I. cap. 173, § 4, making deeds, etc., unless acknowledged and recorded, void as to others than the parties to them and their heirs, has been and should be construed as if containing the above provision.

An unsealed mortgage, though inoperative as a conveyance of land, will in equity be enforced between the parties to it according to its intent, and will also bind the land against a subsequent purchaser for value with notice of the unsealed mortgage.

A mortgage was given for $45,000. While $35,000 remained unpaid, a further loan of $15,000 was made from the mortgagees, and a new mortgage for $50,000 was given conveying the same property as the former one. The first mortgage was left uncancelled, and the second mortgage contained no statement that it included the indebtedness secured by the first.

*Held*, that, while the court disapproved the proceeding, it could not avoid the second mortgage as against public policy, as violating the registry laws, or, in the absence of fraudulent intent shown, as violating the statute against fraudulent conveyances.

BILL IN EQUITY to establish a mortgage lien, for an account, and an injunction.

*Providence, March* 16, 1889.   DURFEE, C. J.   The case stated in the bill is as follows : September 6, A. D. 1873, the defendant corporation borrowed of the two complainant banks $45,000, one half from each bank, and gave two notes for $22,500 each, one to each bank, securing them by mortgage of its mill estate.   March 5, A. D. 1885, the corporation, while still owing $35,000 on said notes, borrowed of the banks $15,000 more, and gave new notes to the amount of $50,000, $25,000 to each bank, securing the same by what was supposed to be an additional mortgage for $50,000 on said mill estate, the banks retaining the original notes and mortgages as further security.   The new notes were delivered to the banks and the new mortgage left for record, the banks believing it to be in due form.   September 2, A. D. 1887, the corporation, being already largely indebted to the defendants, Lucius W. Carroll and Adams P. Carroll, for goods and advances, and being desirous of further advances, gave them a mortgage as security therefor to the amount of $15,000 on said mill estate and certain other property.   Before the mortgage was made, the treasurer of the corporation visited the town clerk's office, where the $50,000

mortgage, left there for record had remained, for the purpose of getting from it a description of the premises mortgaged, and then learned that, though recorded, it had never been sealed nor acknowledged. The treasurer took it and affixed the corporation seal, and, returning it to the town clerk, asked him to amend the record, which was done. The mortgage deed to the Carrolls contained a statement that the mill estate mortgaged by it was subject to a mortgage to the banks to secure $50,000. The bill alleges that, while the mortgage to them was in negotiation, they were informed by the corporation or its agent that the mill estate was mortgaged to the banks for $50,000, and that they, the Carrolls, believed the mortgage for $50,000 to be valid. The corporation afterwards became insolvent, and a receiver of its property was appointed, who sold the same to the defendant Lucius Briggs for $2, giving him a deed June 4, A. D. 1888. Briggs knew of the mortgage for $50,000 when he purchased, and was ignorant of any defect in it. The bill alleges that since then the facts have become generally known, and that Briggs and the Carrolls are claiming or threatening to claim that the banks have no valid lien or security on the mill estate for their claim of $50,000. The bill prays that the mortgage may be declared to be valid, or to be a lien in equity for the amount of their claim, and for foreclosure. The defendants, Briggs and the Carrolls, have demurred to the bill generally for want of equity.

The said defendants contend that under the statute law of the State, Pub. Stat. R. I. cap. 173, § 4,[1] the mortgage for $50,000 is void, not only because it was not sealed when recorded, but also because not acknowledged, and that it confers no rights whatever on the banks. The section referred to declares that all conveyances of real estate for more than a year, and all deeds of trust

---

[1] As follows:

"SECT. 4. All bargains, sales, and other conveyances whatsoever of any lands, tenements, or hereditaments, whether they be made for passing any estate of freehold or inheritance, or for term of years exceeding the term of one year, and all deeds of trust and mortgages whatsoever, which shall hereafter be made and executed, shall be void, unless they shall be acknowledged and recorded as aforesaid : *Provided,* that the same, between the parties and their heirs, shall nevertheless be valid and binding."

and mortgages, shall be void unless they shall be acknowledged and recorded, provided that between the parties and their heirs they shall be valid. The language, taken literally, is absolute, and, under it so taken, A. might stand by and see B. convey a lot of land to C. by deed, and then take a deed from B. of the same lot in due form, and if the deed to C. should happen not to have been acknowledged, or, if acknowledged, should happen not to have been forthwith recorded, could acquire the better title by lodging his deed for record. We do not understand, however, that the section has ever been construed so as to permit this ; on the contrary we understand that it has always, notwithstanding the absoluteness of its language, been construed to be subject to an exception, implied from its purpose as a provision for the protection of *bonâ fide* purchasers and creditors, to the effect that any deed, valid between the parties and their heirs, though neither acknowledged nor recorded, shall likewise be valid as to other persons having actual notice of it; so that if any other person having such notice take a conveyance of the land covered by the prior deed, he will take it subject to any right, title, or interest therein created by the prior deed as fully as if the prior deed had been duly acknowledged and recorded. It is true that we do not find this construction given to the section by actual decision in any reported case, but there are reported cases in which the construction is recognized. *Taylor et ux.* v. *Luther*, 2 Sumn. 228; *Nichols* v. *Reynolds*, 1 R. I. 30, 36. The construction is confirmed by numerous decisions under similar statutes in other states, some of which follow : *Norcross* v. *Widgery*, 2 Mass. 506 ; *State of Connecticut* v. *Bradish*, 14 Mass. 296 ; *Trull* v. *Bigelow*, 16 Mass. 406 ; *Jackson, dem. Gilbert*, v. *Burgott*, 10 Johns. Rep. 457 ; *Van Rensselaer* v. *Clark*, 17 Wend. 25 ; *Rogers* v. *Jones*, 8 N. H. 264 ; *Emmons* v. *Murray*, 16 N. H. 412; *Hart et al.* v. *Farmers & Mechanics Bank et al.*, 33 Vt. 252 ; *Ohio Life Insurance Co.* v. *Ledyard*, 8 Ala. 866 ; *Rupert et al.* v. *Mark*, 15 Ill. 540. *Correy's Lessee* v. *Caxton & Rees*, 4 Binney, 140. The Massachusetts statute provided that the conveyance should not " be good and effectual against any other person than the grantor and his heirs unless acknowledged and recorded." " But," said Parsons, C. J., in *Norcross* v. *Widgery*, *supra*, " if the second

purchaser has notice of the first conveyance, the intent of the statute is answered, and his purchase afterwards is a fraudulent act." This construction finds countenance in the wording of the statutes of some of the states; but the construction is the same, generally, even where the statutes declare unqualifiedly that unregistered conveyances shall be void as against purchasers, or as against all persons who are not parties to the conveyance. *Le Neve* v. *Le Neve*, Ambler, 436 ; 2 White & Tudor Lead. Cas. Eq. 4th Amer. ed. 109, and cases cited in American notes on pages 213, 214. We think our statute always has been and should continue to be construed in the same manner.

The statute, however, only applies to deeds, and it is not clear that the mortgage in question is a deed ; for though the treasurer of the corporation affixed a seal to it, it is not alleged that he was authorized to do it. If the mortgage be not a deed, it is inoperative at law as a conveyance, and would bind the estate only in equity, where it would undoubtedly be enforced between the parties according to its intent. Would it likewise bind the estate as against a subsequent mortgagee or purchaser for value with notice? We think so. The general rule is, that a purchaser with notice of the right of another, is in equity liable to the same extent and in the same manner as the person from whom he purchases. 2 Pomeroy Equity Juris. §§ 591, 659, 692. In *Bullock* v. *Whipp*, 15 R. I. 195, this court held that a mortgage, accidentally remaining without a seal, was good in equity against an attaching creditor with notice. And in *Lebanon Savings Bank* v. *Hollenbeck*, 29 Minn. 322, cited in *Bullock* v. *Whipp*, it was held that such a mortgage was good in equity against a purchaser buying subject to the mortgage and assuming it. See *Town of Middletown* v. *Newport Hospital, ante,* p. 319. 1 Story Equity Juris. § 395 *et sq.*

The Carrolls urge that their mortgage was given in great part for advances in goods and money to the corporation, made before the mortgage was given, and before the notice was received, and that therefore their mortgage ought not to be affected by the notice. Their advances, however, were made upon the general credit of the firm without special security, whereas the banks lent their money only on an agreement for mortgage security which

they supposed was duly given. The banks thus acquired at least an equitable lien upon the mill estate, and the Carrolls, taking their mortgage subsequently with notice thereof, must be held to have taken subject thereto. Besides, the mortgage to the Carrolls was given expressly subject to incumbrance in favor of the banks for $50,000.

Said defendants further contend that the mortgage is against public policy and void, because, whereas only $15,000 was lent, the mortgage purports to be given as security for $50,000, the records being thus used for the publication of a falsehood. The answer is, that the mortgage was given for $35,000 due on the prior mortgage as well as for $15,000 newly lent, the prior mortgage being kept uncancelled by way of further security. This is not entirely satisfactory; since the second mortgage does not set forth that it included the debt secured by the first, and it might, for anything that appears, have been additional thereto. It is said the practice is common to all the savings banks. It seems to us that such a practice, whether common or not, is objectionable, since it tends to mislead and offers opportunities for fraud. It does not appear, however, that any fraud was contemplated or that any has been practised. The objection is, not that the second mortgage was given for more than the mortgagor owed, but that it was given in part for indebtedness already secured by the prior mortgage, left uncancelled, without disclosing the fact. This is not prohibited by our registry laws, or, in the absence of any fraudulent purpose, by our statute of fraudulent conveyances, either directly or by clear implication; and therefore, while we are not disposed to approve the transaction, we are nevertheless not prepared to declare it void. It is desirable that the records should at all times disclose the true state of the titles there registered, but it is notorious that they do not. Mortgages which have been paid are left uncancelled. Mortgages which have been partly paid do not show that they have been partly paid, and have never been supposed to be vitiated thereby. Mortgages on several pieces of property, each given for the same debt without making reference to the other, have been enforced against junior mortgagees and attaching creditors. *Franklin* v. *Gorham*, 2 Day, Conn. 142; *Anderson's Adm'r* v. *Davies' Adm'r*, 6 Munf. Va.

484 ; 1 Jones on Mortgages, § 356.   The Connecticut cases, cited
for said defendants, go much beyond the letter of the registry law
of that State, in supposed compliance with its spirit or policy ;
but they are mostly cases in which the mortgage debt was falsely
or defectively described, not like the case at bar.   They lay down
a stricter rule than prevails in other states.   In *Michigan Ins.
Co.* v. *Brown*, 11 Mich. 265, it was held that a mortgage, given
to secure all existing debts without specifying them, was good
against subsequent purchasers and incumbrancers.   See, also, *Ma-
chette* v. *Wanless*, 1 Col. 225.   It is always a delicate matter to
declare a transaction, which has been honestly entered into, void
as against public policy, because it is such that it may be per-
verted afterwards to fraudulent purposes.   We are not satisfied
that it is our duty to declare the mortgage for $50,000 void on
that account.

The banks were doubtless negligent in allowing the mortgage
for $50,000 to lie in the town clerk's office, without being called
for, so long as they did ; but we do not think this was such *laches*
as should debar them of relief.   It does not appear that the de-
fendants have suffered by reason thereof.

*Demurrers overruled.*

*Francis W. Miner*, *William G. Roelker*, *Nathan F. Dixon* &
*Charles Perrin*, for complainants.

*Ziba O. Slocum* & *Solomon Lucas*, for respondents, the Car-
rolls and Briggs.

*Thomas H. Peabody*, for respondent, the Stillman Manufactur-
ing Co.