TRACY M. HICKS v. FRUEN CEREAL COMPANY AND OTHERS.[1]

December 19, 1930.

No. 27,928.

*Boutelle, Bowen & Flanagan* and *Best & Flanagan,* for appellant.
*Junell, Oakley, Driscoll & Fletcher* and *M. B. McDonald,* for respondents.

DIBELL, J.

This is an action in equity praying a decree that certain bonds in the amount of $1,000 are obligations of the defendant Fruen

[1]Reported in 233 N. W. 828.

Cereal Company, that they are owned by the plaintiff, and that they are secured by a deed of trust dated October 1, 1918. There were findings for the defendants. The plaintiff appeals from the order denying his motion for a new trial. There are two questions:

(1) Whether the plaintiff is the owner of 20 bonds of $50 each of the Fruen Cereal Company, defectively executed and not certified as required by the deed of trust and bonds.

(2) Whether, if so, equity will give them effect.

On October 1, 1918, the Fruen Cereal Company of Minneapolis executed a deed of trust to the Wells-Dickey Trust Company, of which the defendant First Minneapolis Trust Company is the successor, to secure $75,000 of its bonds, due in five years, with semi-annual interest at seven per cent. The deed of trust and each bond provided that each bond should contain this provision:

"This bond shall not be valid for any purpose until the Trustee's certificate indorsed hereon shall have been executed by Wells-Dickey Trust Company, Trustee."

Each bond had a form of trustee's certificate:

"This is to certify that this bond is one of the series of bonds described in the within mentioned deed of trust or mortgage.

"Wells-Dickey Trust Company, Trustee,

"By . . . . . . . . . .

"Its Certifying Officer."

On the company's ledger there was a credit to Hicks of $440 under date of November 4, 1921, and a credit of $560 under date of November 30, 1921. Hicks died on April 9, 1924. Twenty bonds of $50 each, numbered E-371 to E-390, were found in his safety deposit box. They were signed by the president. They were not attested by the secretary nor was the corporate seal attached nor were they certified by the trustee. Whatever of property right was in them passed to the plaintiff.

In June, 1923, the Fruen company was financially involved. A bondholders' committee was appointed. Hicks was a member. The Fruen company, in making a list of its bondholders for the use of

the trust company, put Hicks among them. A form or circular letter to the bondholders was sent to him as to the others. In July, 1923, the Fruen company assigned its property, subject to the deed of trust securing the bonds, to the defendant James E. Mehan as trustee for creditors. He sold it to Arthur B. Fruen, who transferred it to the defendant Fruen Milling Company. There has been much refinancing of the property now held by the latter company, not necessary to state here, since the old Fruen Cereal Company was organized, according to the findings, "many years prior to 1909." There is no suggestion that anything wrong was done though apparently the creditors lost. That there should be confusion is natural. Persons interested in the Fruen concern and in this litigation disclaim a possibility that Hicks would have taken the bonds in other than an honorable way. The coupons which became due on October 1, 1922, were paid by the trustee. We do not attach much significance to this though it is regarded as an important factor by the plaintiff. The court finds that they were paid by mistake. The coupons which became due on April 1, 1923, were clipped and are missing, except the one attached to bond No. 387, which is still attached. The October 1, 1923, coupons were not clipped. Prior to their maturity the property of the cereal company had passed to its trustee for creditors. None of the coupons remain except those maturing October 1, 1923, and one of April 1, 1923. Without explanation the inferences to be drawn are uncertain, and they cannot be said to be controlling in favor of the plaintiff. There is evidence that there were bonds in the stationery room and about the plant. Mehan, the trustee for the creditors, so testified. He was employed by the cereal company before he became trustee for its creditors. He is now the vice president of the Fruen Milling Company, which succeeded by indirect purchase through him as trustee to the assets of the cereal company. He testified:

Q. "Now, Mr. Mehan, you testified you saw some of these bonds in the stationery room and some somewhere else around the plant up there?

A. "Yes, sir.

Q. "You knew Stephen Hicks pretty well?

A. "Yes, sir.

Q. "You knew what kind of a man he was? You don't wish us to have the impression, do you, that Mr. Hicks might have picked up these bonds out of the stockroom and stuck them in his pocket?

A. "Oh, no, Mr. Hicks was the soul of honor.

Q. "He would never have done anything like that?

A. "Never in the world. My point there was that those were treated out there as stationery; kept in the stationery room on shelves where the letterheads were and so forth, and they were treated as plain stationery until they were properly executed by the company.

Q. "Yes. Now in that connection, Mr. Mehan, you say there was maybe a couple of hundred of them out there?

A. "At least. There was probably in the neighborhood of 200 of the various denominations; totaled about 200."

There clearly was confusion in fact. There may be a possibility of accounting for the bonds upon a theory other than that the credits on the company's books for $1,000 represent his payment for these bonds. We cannot see it so. The evidence points so forcefully to the conclusion that there was a sale of the bonds to Hicks that a different finding should not stand upon the evidence before us. It is true that the burden of proof is upon the plaintiff of showing that the 20 bonds came to him as actual obligations. Mere speculation or conjecture is not enough. Mehan was negotiating with Hicks for the transfer of his cereal bonds for bonds of the Fruen Milling Company. The record before us does not show that he succeeded. All concede that Hicks was a bondholder. No other bonds than these 20 are shown. The president of the cereal company did not testify. There may be other testimony that will make the transaction appear different. All the evidence of value may not have been produced. But as it is we cannot let the finding stand.

■ The further question is whether these bonds are valid if taken without attestation and the trustee's certificate. A corporate seal was not attached. They contained the following:

"THIS BOND shall not be valid for any purpose until the Trustee's certificate indorsed hereon shall have been executed by Wells-Dickey Trust Company, Trustee. * * *

"IN WITNESS WHEREOF, the said Fruen Cereal Company, a Corporation, has caused this bond to be signed in its corporate name by its President and its Secretary, and its corporate seal to be hereunto affixed, and has caused the interest coupons hereto attached to be executed in its behalf by the lithographed facsimile signature of its Treasurer, this first day of October, 1918.

"Attest:                                FRUEN CEREAL COMPANY

"..............              ,    By D. D. McEachim

"Its Secretary                           Its President."

There was indorsed on the back:

"TRUSTEE'S CERTIFICATE·

"This is to certify that this Bond is one of the series of bonds described in the within mentioned Deed of Trust or Mortgage.

"Wells-Dickey Trust Company, Trustee,

"By  .   .   .   .   .    .     .     .    .    .

"Its Certifying Officer."

If Hicks gave his money for the bonds, signed by the president, though they were not attested by the secretary and not certified by the trustee, and though the bonds provided that they should not be valid without the trustee's certificate, a court of equity will give them effect. The principle which requires the court to declare the equitable result and impress the property with a lien notwithstanding the defective execution is illustrated in mortgage cases. Lebanon Sav. Bank v. Hollenbeck, 29 Minn. 322, 13 N. W. 145; Howard v. Iron & Land Co. 62 Minn. 298, 64 N. W. 896; 1 Jones, Mortgages (8 ed.) § 232. A search, we apprehend, would produce a quite parallel case.

We find nothing in the general rule stated in 2 Fletcher, Cyc. Corp. p. 1959, § 994, or 4 Thompson, Corp. (3 ed.) p. 287, § 2670, opposed. It does not control the situation here.

The plaintiff's equity is entirely clear. If Hicks paid $1,000 for the bonds, he should have the lien and no one is injured. There is

no one having a prior right if the plaintiff's bonds are actual obligations. The other bondholders are not injured. They of course would gain by excluding him, for their bonds would then have all the mortgaged property for security, which in fact should also stand, but would not, for the debt of the plaintiff.

Order reversed.

LORING, J. took no part.